Date February 25, 2019

(Rev. 5/1/13)

RECEIVED

FEB 26 2019

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
_____ DIVISION

Eric McGuire Sr.
_____
Plaintiff

Prisoner # 597197

VS.

Tim Tulfen / Mike Stone / L.P.A.C., including staff
_____
Defendant

Civil Action No. 3:19-cv-0245   SEC. P

Judge _____

Magistrate Judge _____

## COMPLAINT
### PRISONER CIVIL RIGHTS UNDER 42 U.S.C. § 1983

I. **Previous Lawsuits**

   a. Have you begun any other lawsuit while incarcerated or detained in any facility?

   Yes [ ]    No [X]

   b. If your answer to the preceding question is "Yes," provide the following information.

   1. State the court(s) where each lawsuit was filed (if federal, identify the District, if state court, identify the County or Parish):

   _____

   _____

   2. Name the parties to the previous lawsuit(s):

   Plaintiffs: _____

   Defendants: _____

   3. Docket number(s): _____

   4. Date(s) on which each lawsuit was filed: _____

   5. Disposition and date thereof [For example, was the case dismissed and when? Was it appealed and by whom (plaintiff or defendant)? Is the case still pending?]:

   _____


(Rev. 5/1/13)

    c.    Have you filed any lawsuit or appeal in any federal district court or appeals court which has been dismissed?

        Yes [ ]    No [X]

        If your answer to the preceding question is "Yes," state the court(s) which dismissed the case, the civil action number(s), and the reason for dismissal (e.g., frivolity, malice, failure to state a claim, defendants immune from relief sought, etc.).

II.    a.    Name of institution and address of current place of confinement:
(L.P.D.C.) Lincoln Parish Detention Center / 170 Camp Road / Ruston, LA. 71270

    b.    Is there a prison grievance procedure in this institution?

        Yes [X]    No [ ]

        1.    Did you file an administrative grievance based upon the same facts which form the basis of this lawsuit?

            Yes [X]    No [ ]

        2.    If you did not file an administrative grievance, explain why you have not done so.

        3.    If you filed an administrative grievance, answer the following question. What specific steps of the prison procedure did you take and what was the result? (For example, for state prisoners in the custody of the Department of Public Safety and Corrections: did you appeal any adverse decision through to Step 3 of the administrative grievance procedure by appealing to the Secretary of the Louisiana Department of Public Safety and Corrections? For federal prisoners: did you appeal any adverse decision from the warden to the Regional Director for the Federal Bureau of Prisons, or did you make a claim under the Federal Tort Claims Act?)

I filed a succession of grievances only to have them ignored. I never recieved any responce

        Attach a copy of each prison response and/or decision rendered in the administrative proceeding.

III.    Parties to Current Lawsuit:

    a.    Plaintiff, Eric McGuire, Sr.
        Address P.O. Box 2038 / Ruston, LA. 71270

(Rev. 5/1/13)

b. Defendant, __Mike Stone__, is employed as __Sheriff__ at __Lincoln Parish__.

Defendant, __Jim Tuten__, is employed as __Warden__ at __Lincoln Parish Detention Center__

Defendant, __Vicky Reeves__, is employed as __Nurse__ at __Lincoln Parish Detention Center__

Additional defendants, __L.P.D.C. and all staff involved.__

## IV. Statement of Claim

State the **FACTS** of your case. Specifically describe the involvement and actions of each named defendant. Include the names of all persons involved in the incident(s) or condition(s) giving rise to this lawsuit, and the dates upon which and the places where the incident(s) and/or condition(s) occurred. **YOU ARE REQUIRED TO SET FORTH ONLY FACTUAL ALLEGATIONS. YOU ARE NOT REQUIRED TO SET FORTH LEGAL THEORIES OR ARGUMENTS.**

*① Facts: Upon order of Warden Jim Tuten, I was kept in isolation in Lincoln Parish Detention Center in September - October - November - December of 2018

*② Facts: During these months of isolation I made at least 5 visits to N.E.L.A Medical Center E.R. for elevated blood pressure or related issues.

*③ Facts: My family and I were informed that my isolation was not a punishment, but for medical reasons relating to my blood pressure.

*④ Facts: I have never received a disciplinary, or ever informed that I'd committed any act in violation of Lincoln Parish Detention Center's rules and regulations.

Continued on page 5

(Rev. 5/1/13)

## V.  Relief

State exactly what you want the court to provide to you or do for you. Make no legal arguments. Cite no cases or statutes.

1) Transfer me to another Unit 2) Investigate the facility and the administration 3) Recieve mental health counseling 4) To be awarded $250,000 Two hundred & fifty thousand dollars

## VI.  Plaintiff's Declaration

a.  I understand that if I am transferred or released, I must apprise the Court of my address, and my failure to do so may result in this complaint being dismissed.

b.  I understand that I may not proceed without prepayment of costs if I have filed three lawsuits and/or appeals that were dismissed on grounds that the action and/or appeal was frivolous or malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

c.  If I am located in a prison participating in the Electronic Filing Pilot Program, I consent to receive orders, notices and judgments by Notice of Electronic Filing.

Signed this 19 day of February, 20 19.

\#597197

**Prisoner no. (Louisiana Department of Corrections or Federal Bureau of Prisons)**

**Signature of Plaintiff**

(Explanation)

* Fact 1 * After being told by the nursing staff that Officer Skipper told the Warden that I was intentionally doing things to cause my blood pressure to rise, I was isolated.
  - I was taken to the emergency room a number of times, due to elevated blood pressure or issues relating to elevated blood pressure.
  - I have been dealing with elevated blood pressure and issues relating to such for many years. I've even, at one time, been considered legally disabled due to malignant hypertension.
  - Because of belief that I was causing my blood pressure to spike by something I was doing led to me being placed in isolation, and kept in isolation for nearly 4 months.

\* (Implication) This implies that the administration felt I was doing something ~~something~~ I should not have and that being in isolation would either
  1) Help my blood pressure
  2) Catch me doing something to elevate my blood pressure
  3) Punish me for doing something or for violating some rule

  A. Isolation did nothing to help my blood pressure
  B. Even though I was under constant observation, I was never seen doing anything to elevate my blood pressure.
  C. This housing in isolation was definitely a cruel and unusual punishment.

\* The only thing the constant isolation served was to punish me.

(Explaination)

\* Fact 2 \* I was told by Warden Tulen that my isolation was not punishment, but to help with blood pressure.
  - Though I was told, along with my family, by officers, medical staff and wardens' that I was not being punished, I was denied priveleges.

Page 5 of 7

- I visited the Emergency Room and housed in I.C.U. on an average of nearly 2 times a month during this period of isolation.
  - ~ (Implication) Isolation only served to increase my elevated blood pressure and related issues which also increased my trips to the Emergency Room and thus, nullifying the claim that Isolation was for my own benefit, therefore:
    1) I was kept in isolation though it had NO medical soundness or validity.
    2) This isolation was more punishment (Cruel and Unusual)

(Explaination)
* FACT 3 * For a period of approximately 90 I was kept on complete Isolation 24 hours a day and told by all shift supervisors that I could not leave my cell (per. Warden Wyten)
  - These instructions came after an extended stay in I.C.U. though I was in Isolation when I had to go to the E.R.
  - These visits to the E.R. and I.C.U. were very costly.
  - Medical Staff only monitored or checked my blood pressure when I asked, Even though it was always elevated it was ignored if I didn't complain.
  - ~ Implication: The housing in Isolation was not about my medical health or the improvement of my health but about punishment.
    1) There was no need for me to be kept in isolation if there was clearly no medical reason
    2) My trips to the hospital was very costly, to the point where the Warden contacted the prosecutor about offering me a plea.
    3) This was clearly a form of punishment.

(Explaination)
* FACT 4 * It was Cruel and Unusual to Keep me housed in isolation with any recreation or privileges

## #4 Conclussion

1) I was placed on complete isolation under the guise that it was for my benifit.
2) I was denied any recreation
3) I was not allowed to attend religious services.
4) I was not allowed to view any news programs
5) I recieved no mental health counseling
6) I was confined for 24 hours a day
7) I was denied priveleges granted all detainees - even those who are disciplinary infractions
8) Denied daily access to phone priveleges
9) Not allowed to shower daily
10) Not allowed television priveleges
11) There are other detainees with medical issues that are not isolated
12) I'm no disciplinary problem
13) Other detainees have gone to the E.R. and been returned to a dorm.
14) During my time in isolation there have been a number of suicide attempts, drug overdose (some, intentional and some due to synthetic marijuana), a number of fights, contraband found ect. But no one was isolated 24 hours a day like I was
15) My mother passed away 11-20-18 and I was still denied daily phone priveleges or recreation