UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **ERIC MCGUIRE, SR.** | **CIVIL ACTION NO. 19-0245** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **JIM TUTEN, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Plaintiff Eric McGuire, Sr., a prisoner at Lincoln Parish Detention Center ("LPDC") proceeding pro se and in forma pauperis, filed the instant proceeding on February 26, 2019, under 42 U.S.C. § 1983. He names the following Defendants: Warden Jim Tuten, Sheriff Mike Stone, Nurse Vicky Reeves, LPDC, and the staff at LPDC.[1] For reasons that follow, Plaintiff's claims—with the exception of his conditions-of-confinement claims against Defendants Tuten, Stone, and Reeves[2]—should be dismissed.

### Background

Plaintiff alleges that, when he was a pretrial detainee, Warden Jim Tuten placed him in isolation from September 2018 to December 2018. [doc. # 1, p. 3; 10, p. 1]. He was locked in his cell for 24 hours each day, he lacked recreation, he received no mental health counseling, and he was not allowed to attend religious services, attend "alcohol anonymous" classes, use the telephone each day, shower each day, or watch television. [doc. # 1, pp. 3, 5-7; 10, p. 3].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

[2] The undersigned directed the Clerk of Court, in a separate Memorandum Order, to serve Plaintiff with summons forms for the additional claims.

Although other "detainees housed in isolation for disciplinary sanctions [were] given a 'break' after 21 days[,] Plaintiff was not given a break." [doc. # 10, p. 3].

The isolation allegedly amounted to cruel and unusual punishment because it increased Plaintiff's blood pressure and caused him to require emergency care. [doc. # 1, p. 6]. He was "taken to the emergency room a number of times due to elevated blood pressure or issues relating to elevated blood pressure." *Id.* at 5. He was placed in intensive care approximately twice each month. *Id.* at 6.

Plaintiff complains that "medical staff only monitored or checked [his] blood pressure when [he] asked, even though it was always elevated . . . ." *Id.* He has "been dealing with elevated blood pressure and issues relating to such for many years." *Id.* at 5. "[A]t one time, [he was] considered legally disabled due to malignant hypertension." *Id.*

Plaintiff alleges that, although officials informed him that he was placed in isolation to help him "with [his] blood pressure," officials actually placed him in isolation because they thought he was either intentionally causing his blood pressure to rise or refusing to take his prescribed medicine. [doc. # 1, pp. 3, 5; 10, p. 2]. He thus implies that his placement in isolation was a mistake. That said, he also alleges that he was placed in isolation as a form of arbitrary punishment, maintaining that he has never violated any rule or regulation which would warrant isolation. [doc. # 1, pp. 3, 5]. Further, he suggests that he was punished because Warden Tuten perceived the costs of his emergency care exorbitant. [doc. #s 1, p. 6; 10-2, pp. 1, 9].

Plaintiff maintains that either he or his wife asked all defendants to remedy the alleged constitutional violations, but defendants refused. [doc. # 10, p. 1]. He implies that, because of his time in isolation, he suffered excessive weight gain, "chronic blood pressure and joint pain,"

2

increased blood pressure which caused "onset heart disease," night sweats, agitation, nightmares, hallucinations, insomnia, mental health problems, and shakes. [doc. # 10, p. 2]. Plaintiff asks the Court to transfer him to another unit, to investigate the facility and the administration, to arrange mental health counseling, and to award $250,000.00 for all injuries he sustained in isolation. [doc. #s 1, p. 4; 10, p. 2].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride*

*Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Procedural Due Process**

By alleging that certain defendants placed him in isolation without first notifying him that he violated a disciplinary rule, Plaintiff implies that defendants violated his right to procedural due process. [doc. # 1, p. 3]. However, to the extent Plaintiff seeks relief solely for his placement in isolation—rather than for the conditions he endured[4] in isolation—he fails to state a plausible claim.

---

[4] The Court should retain Plaintiff's conditions-of-confinement claims against Defendants Tuten, Stone, and Reeves because, when construing the allegations liberally and in his favor, Plaintiff plausibly claims that each defendant was responsible for, or involved in, the decision to confine him under the allegedly unconstitutional conditions.

"'Inmates have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). "'[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (quoting *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."). "In other words, segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).[5]

Here, the Court must, therefore, determine whether Plaintiff's isolation constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life, such that a liberty interest in avoiding the deprivation arises." *Wilkerson*, 774 F.3d at 853 (internal quotation marks and quoted source omitted).

"In deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and [*Wilkinson*] considered the *nature* of the more-restrictive confinement and its *duration* in relation to prison norms and to the terms of the

---

[5] "Extraordinary circumstances" and "without more" are simply "alternative statements of the *Sandin* test: administrative segregation 'without more' or 'absent extraordinary circumstances' is administrative segregation that is merely incident to ordinary prison life, and is not an 'atypical and significant hardship' under *Sandin*." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014).

individual's sentence." *Id.* (emphasis added). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (cited with approval by *Wilkerson*, 774 F.3d at 854). "In essence, courts employ a sliding scale, taking into account how bad the conditions are and how long they last." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). "On such a sliding scale, truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Id.*

With all of that said, however, the "Fifth Circuit recently suggested that two and a half years of segregation is a threshold of sorts for atypicality, such that 18-19 months of segregation under even the most isolated of conditions may not implicate a liberty interest." *Id.* (citing *Wilkerson*, 774 F.3d at 855).

Here, Plaintiff claims that he was in isolation for "approximately 90" days. [doc. # 1, p. 6]. Even "under the most isolated of conditions," this period of segregation was not excessive in degree. See *Bailey*, 647 Fed. App'x at 476. As Plaintiff presents no extraordinary circumstances and alleges no atypical or significant hardships, this claim should be dismissed.[6]

---

[6] See *Bailey*, 647 Fed. App'x at 476 (finding that, if the prisoner was confined less than approximately nineteen months in segregation, he would not state a claim even considering that he was in lockdown 23-24 hours each day, that he lacked visitation, that he lacked contact with other prisoners, that he could not attend religious gatherings or educational/vocational programs, that he lacked entertainment and "canteen," that he could rarely use the telephone, and that he could only shower three times per week); see also *Palmer v. Cain*, 350 F. App'x 956, 957 (5th Cir. 2009) (finding that due process was not required because the appellant's 97 days in administrative segregation was not sufficiently atypical or significant); *Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (finding no claim where the prisoner "received 30 days' cell and commissary restriction

**3. Entities Unamenable to Suit**

Plaintiff names "all staff involved" and LPDC as defendants. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Thus, Louisiana law governs whether the entities that Plaintiff names as defendants have the capacity to be sued. Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership." LA. CIV. CODE art. 24.

Here, neither the "staff" nor LPDC qualifies as a juridical person. See *Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . ."). Accordingly, Plaintiff's claims against these entities should be dismissed.

**4. Involvement**

As above, Plaintiff names "all staff involved" as a defendant. To the extent he names "staff" as a singular entity, the entity is, as explained above, unamenable to suit. If, by "staff," Plaintiff means individual, unidentified persons, he does not address how these unidentified persons were personally involved in depriving him of a constitutional right.

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or

---

(including loss of recreation and library privileges, as well as the ability to attend religious services), 90 days' loss of telephone privileges, 15 days of solitary confinement, a reduction from trustee class 4 to line class 1, and an increase of his custody level from minimum to medium."); *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (finding no claim where the prisoner was housed in a special tier for six months without visitation privileges).

immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Accordingly, Plaintiff's claims against "all staff involved" should be dismissed.

**5. Transfer**

Plaintiff asks the Court to transfer him to another unit. [doc. # 1, p. 4]. A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. §15:824(A).

9

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, his request for a transfer should be dismissed.

**6. Investigation**

Plaintiff asks the Court to investigate the facility and the administration. [doc. # 1, p. 4]. Investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government. In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys. In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys. See LA. CODE. CRIM. PROC. arts. 61 and 62. Here, to the extent Plaintiff demands that the Court investigate Defendants or charge Defendants with crimes, his request should be denied.[7]

**7. Medical Care**

While Plaintiff alleges that his placement in isolation exacerbated his mental and physical health, the undersigned does not discern a claim for inadequate medical care. To the extent Plaintiff does present such a claim—as opposed to seeking relief for the harm to his health

---

[7] Plaintiff should, if he wishes, direct his concerns to a local, state, or federal law enforcement agency. That said, Plaintiff should be aware that, if a prosecuting authority investigates and chooses to forego filing charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281. The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); see, e.g. *Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order. Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities.").

resulting solely from his placement in isolation—he does not state a plausible claim.

To state a plausible claim, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824

(5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff alleges that "medical staff only monitored or checked [his] blood pressure when [he] asked, even though it was always elevated . . . ." [doc. # 1, p. 6]. While in isolation, he "made at least 5 visits to N.E.L.A. Medical Center E.R. for elevated blood pressure or related issues." *Id.* at 3. He "visited the emergency room and [was] housed in I.C.U. an average of nearly 2 times a month . . . ." *Id.* at 6.

Distilled, Plaintiff alleges that, when Defendants knew he was exposed to risks of harm—by virtue of his requests for care—Defendants did not disregard those risks. This does not reflect deliberate indifference.

Plaintiff alleges further: "The inclusion of nurses Vickie Reeves and Pam Franklin[8] is insinuated by their knowledge that isolation did nothing to help Plaintiff's medical condition and in fact made it worse [sic]." [doc. # 10, p. 2 (internal footnote added)]. Liberally construed, he alleges that the nurses knew he faced a substantial risk of serious harm. However, he does not allege that they disregarded that risk by failing to take reasonable measures to abate it. He does not allege that they refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

Finally, Plaintiff claims that he received no mental health counseling, but he appears to offer this allegation only in connection with his conditions-of-confinement claim. [doc. # 1, p. 7].

---

[8] Plaintiff did not name Pam Franklin as a defendant. Even assuming he did, he does not, for reasons below, state a plausible claim against Franklin.

Otherwise stated, he appears to allege that his lack of mental health counseling was but one of many conditions that rendered his confinement unlawful.

To the extent he seeks relief due solely to a lack of mental health care, his claim is entirely conclusory. The undersigned instructed Plaintiff to allege facts establishing that specific, identified individuals were deliberately indifferent to a substantial risk of serious medical harm to him. [doc. # 9, p. 5]. The undersigned also instructed Plaintiff to provide other relevant information, including a description of the treatment and/or medication he claims that Defendants should or should not have provided. *Id.* at 6. Plaintiff, however, does not identify a responsible defendant and, by extension, fails to allege that any particular individual knew of a substantial risk of serious harm to his health and disregarded that risk. As Plaintiff fails to plead enough facts to state a plausible claim, this ostensible claim should be dismissed.[9]

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that, with the exception of Plaintiff Eric McGuire, Sr.'s conditions-of-confinement claims against Defendants Jim Tuten, Mike Stone, and Vicky Reeves, Plaintiff's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or

---

[9] The Court should, however, retain Plaintiff's request for mental health counseling because it is related to his conditions-of-confinement claim.

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 15th day of May, 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE